# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CENTRIFUGAL AIR PUMPS AUSTRALIA,**

**Plaintiff,**

**-vs-** **Case No. 6:10-cv-820-Orl-31DAB**

**TCS OBSOLETE, LLC, SCT PERFORMANCE, LLC, RICK TRUDO, CHRISTOPHER W. JOHNSON, JR., and DAVID POSEA,**

**Defendants.**

---

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 30) filed by Defendants Christopher Johnson ("Johnson"), David Posea ("Posea") and TCS Obsolete, LLC ("TCS"); the Motion to Dismiss (Doc. 32) filed by Defendants SCT Performance, LLC ("SCT Performance") and Rick Trudo ("Trudo"); and the response (Doc. 33) filed by the Plaintiff, Centrifugal Air Pumps Australia ("CAPA").

**I. Background**

According to the allegations of the Amended Complaint (Doc. 24), which are accepted as true for purposes of resolving these motions to dismiss, CAPA resells after-market automotive accessories. TCS makes such accessories, including a device called a "flash tuner," which is used to modify automotive performance. Johnson and Posea are managers of TCS, and Trudo is president of SCT Performance.

In 2005, CAPA entered into a contract (henceforth, the "Distribution Contract") with TCS, then known as "SCT/Superchips Custom Tuning." (Doc. 24 at 3, Doc. 31 at 2). CAPA was given the exclusive right to sell TCS flash tuners in certain countries. (Doc. 24 at 3). TCS breached the Distribution Contract by selling its products into some of those territories, either directly or through affiliate companies. (Doc. 24 at 4). TCS also breached the Distribution Contract by selling defective flash tuners to CAPA. (Doc. 24 at 5).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c)); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

The United States Supreme Court recently addressed what factual allegations are necessary to survive a motion to dismiss. In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Analysis

In Count I of the Amended Complaint, CAPA asserts against TCS the breach-of-contract claim described in the Background section of this opinion. No party seeks to have that count dismissed. In Count II, CAPA raises the same breach of contract claim against SCT Performance that it raised in Count I against TCS. However, SCT Performance was not a party to the Distribution Contract and, unlike TCS, is not alleged to be the current incarnation of SCT/Superchips Custom Tuning, the company that did enter into the Distribution Contract with CAPA. CAPA attempts to hold SCT Performance responsible on the Distribution Contract by asserting that the company's president, Trudo, has "referred to himself corporately simply as the President of 'SCT'" when dealing with CAPA. (Doc. 24 at 8). It appears that CAPA is arguing

that Trudo misled it by pretending to be an officer of SCT/Superchips Custom Tuning, the company that entered into the Distribution Contract with CAPA. However, such an impersonation, standing alone, would do nothing to make Trudo's company responsible for the contracts of the entity he was pretending to work for. CAPA also asserts that SCT Performance assumed the Distribution Contract by doing a number of things, including by "simply using the name 'SCT'" and by "adjusting software for dealers, warehouse distributors, and others who obtained software contemplated by the [contract]". Even assuming their truth, these allegations – which appear to conflict with CAPA's allegations that TCS was the entity that was performing (and breaching) the Distribution Contract – would not establish that SCT Performance assumed the obligations set forth in the Distribution Contract. Count II will be dismissed with prejudice.

In Count III, CAPA asserts a claim for tortious interference with an advantageous business relationship against Trudo, Posea, and Johnson. (Doc. 24 at 9). Count III suffers from a number of problems. Initially, CAPA appears to be asserting that the individual defendants interfered with its contractual relationship with an entity known as Dreamscience, Ltd. ("Dreamscience"). However, at various points, CAPA also asserts that the individual defendants intended that Dreamscience take steps that would interfere with CAPA's rights under the Distribution Contract.[1]

Both Posea and Johnson are managers of TCS. Generally, a tortious interference claim exists only against persons who are not parties to the contractual relationship, and an employee or representative of a contracting party must be considered as a party to the [contractual] relationship.

---

[1]For example, CAPA alleges that Posea "was at all times aware of the Dreamscience scheme and acted to execute its purpose, which was to interfere with the CAPA/TCS contract." (Doc. 24 at 12).

*Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092 (Fla. 1st DCA1999) (citing *West v. Troelstrup*, 367 So.2d 253, 255 (Fla. 1st DCA 1979)). There are some exceptions to this rule, but none apply on the facts as alleged in Amended Complaint. To the extent CAPA alleges that Posea and Johnson interfered with its contractual relationship with TCS, it has failed to state a claim.

As for Trudo, CAPA contends that he was president of "SCT," and "ran all SCT operations, whether it is [sic] TCS Obsolete or SCT Performance." (Doc. 24 at 12). To the extent this is an attempt to allege that Trudo, like Posea and Johnson, was employed by TCS, the allegation that he tortiously interfered with the CAPA/TCS relationship would again fail to state a claim.[2] Moreover, this Court dismissed the original complaint in large part because CAPA improperly attempted to blend all of the defendants into a single entity known as "SCT" for purposes of pleading. (Doc. 21 at 3-4). By calling Trudo president of "SCT," which is defined as both TCS and SCT Performance, CAPA has repeated its improper pleading practice, warranting dismissal of Count III for this reason alone.[3] Unlike the situation in Count II, it appears at least possible that CAPA could state a claim for tortious interference with the CAPA/Dreamscience contractual relationship against one or more of the individual defendants. Accordingly, Count III will be dismissed without prejudice to CAPA's right to assert such a claim.

---

[2]Further, because SCT Performance was not bound by the TCS/CAPA contract, it would appear that Trudo and his company were free to sell to Dreamscience or other CAPA customers and to take the other actions asserted in Count III.

[3]This is not the only example of CAPA attempting to repeat this practice. For example, elsewhere in Count III CAPA asserts that Posea "controls all software for SCT products." (Doc. 24 at 15).

However, the Court notes that Count III contains reams of unnecessary and irrelevant material, such as details about trips to England by the individual defendants and the contents of emails which do nothing to establish the elements of a claim for tortious intereference, violating the command of Rule 8 that a pleading contain "a short and plain statement of the claim". This is consistent with CAPA's practice of repeating the same material in every count of the pleading rather than including it in a background section and simply incorporating the background section into succeeding counts. If CAPA chooses to file a second amended complaint, it must correct these time-wasting deficiencies or face sanctions, up to and including summary dismissal of the entire pleading.

In Counts IV-VIII, CAPA attempts to assert common law unfair competition claims against Trudo, SCT Performance, Johnson, Posea and TCS, respectively. To a state a claim for unfair competition under Florida common law, a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. *M.G.B. Homes, Inc. v. Ameron Homes, Inc*., 903 F.2d 1486, 1494 (11th Cir.1990). Even assuming *arguendo* that the individual defendants qualify as "competitors," CAPA has failed to establish either element of this cause of action. The only conduct put at issue in the Amended Complaint that might be considered unfair are the alleged breaches of the exclusivity provisions of the Distribution Contract. Such breaches are neither deceptive nor fraudulent. In addition, the type of "confusion" alleged by CAPA is not relevant to a claim for unfair competition. Generally speaking, unfair competition "goes to the question of marketing." *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1263 (5th Cir.1971). CAPA alleges things along the lines of customers being confused "because they could not understand why product they had previously brought from CAPA dealers was now so cheap

from other dealers [which were actually Dreamscience dealers].” (Doc. 24 at 23) (brackets in original). There were no allegations that customers bought flash tuners from any of the Defendants (or Dreamscience) under the mistaken impression that they were buying from CAPA, or anything of that nature. Counts IV-VIII will be dismissed with prejudice.

In Counts IX-XIII, CAPA attempts to assert claims for violations of Florida’s Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.211 *et seq.*, against Trudo, SCT Performance, Johnson, Posea and TCS, respectively. FDUTPA provides that an aggrieved party may initiate a civil action against a party who has engaged in “deceptive acts or practices in the conduct of any trade or commerce.” *See* § 501.204(1), Fla. Stat. Under Florida law, a “deceptive practice” for purposes of FDUTPA is “one that is likely to mislead consumers.” *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000). The allegations raised by CAPA in the FDUTPA counts are essentially the same as the allegations in the common law unfair competition counts. None of the allegations show that consumers were likely to be misled by any actions taken by the Defendants. Counts IX-XIII will be dismissed with prejudice.

Counts XIV-XVIII raise constructive fraud claims against Trudo, SCT Performance, Johnson, Posea and TCS, respectively. Under Florida law, constructive fraud occurs “when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.” *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1179 (M.D.Fla. 2005). CAPA’s allegations do not establish the existence of a confidential or fiduciary relationship between CAPA and any of the Defendants, much less that any of the Defendants took “unconscionable advantage” of CAPA. Counts XIV-XVIII will be dismissed with prejudice.

In Count XIX, CAPA attempts to assert a claim for fraudulent misrepresentation against Trudo. "In the state of Florida, relief for a fraudulent misrepresentation may be granted only when the following elements are present: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). CAPA contends that Trudo fraudulently misrepresented to the company that only CAPA had the right to sell certain products in CAPA's territory while Trudo and Johnson were assisting Dreamscience in selling to that market. (Doc. 24 at 128-129). This is simply a restatement of the exclusivity language of the Distribution Contract. CAPA cannot recast its breach of contract claim into a fraud claim.[4] "[A] mere promise not performed . . . by itself, cannot form the predicate for actionable fraud." *Biscayne Investment Group, Ltd. v. Guarantee Management Services, Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005). CAPA also alleges that Trudo falsely represented that either TCS or SCT Performance (CAPA is not sure) could not "load" or "service" a particular product, the ST225, so as to induce CAPA to stop selling the product, because Trudo had promised the ST225 market to Dreamscience. (Doc. 24 at 129). Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." CAPA has failed to state with particularity the party to whom Trudo made the statement or statements at issue, how or when Trudo did so, even the party on whose behalf – TCS or SCT Performance – Trudo made the statement. (CAPA also fails to offer

[4]For the same reason, CAPA's contention that Trudo sold product to Dreamscience and then lied to CAPA about having done so cannot serve as the basis for a fraudulent misrepresentation claim, as it is simply the breach of contract claim under another label.

any explanation as to how Trudo, the president of SCT Performance, could be making statements on behalf of TCS). However, at this stage it appears at least possible for CAPA to satisfy Rule 9(b) and state a valid fraudulent misrepresentation claim as to Trudo's statement regarding the loading or servicing of the ST225 product (only). Accordingly, this count will be dismissed without prejudice to CAPA's right to assert such a claim.

In Count XX, CAPA raises a fraudulent misrepresentation claim against TCS. CAPA contends that TCS sold it products that would not work in Australia or were defective (or, perhaps, both – the pleadings are not clear). Again, these are breach-of-contract allegations improperly recast as fraudulent misrepresentation allegations. Count XX will be dismissed with prejudice.

In consideration of the foregoing, it is hereby

**ORDERED** that the motions to dismiss (Doc. 30, 32) are **GRANTED IN PART** and **DENIED IN PART**, as described above. Counts II, IV-XVIII and XX are **DISMISSED WITH**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 20, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party