**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CENTRIFUGAL AIR PUMPS**
**AUSTRALIA,**

        **Plaintiff,**

-vs-                                            Case No. 6:10-cv-820-Orl-31DAB

**TCS OBSOLETE, LLC, SCT**
**PERFORMANCE, LLC, RICK TRUDO,**
**CHRISTOPHER W. JOHNSON, JR.,and**
**DAVID POSEA,**

        **Defendants.**

## ORDER

This matter comes before the Court without oral argument on the Motion for Reconsideration (Doc. 38) filed by the Plaintiff, Centrifugal Air Pumps Australia ("CAPA") and the response (Doc. 48) filed by Defendants SCT Performance, LLC ("SCT Performance") and Rick Trudo ("Trudo"). CAPA seeks reconsideration of this Court's order (Doc. 37) granting in part and denying in part two motions to dismiss (Doc. 30, 32) filed by the Defendants.

**Legal Standards**

The federal rules do not specifically provide for the filing of a "motion for reconsideration." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). However, it is widely recognized that Rule 59(e) encompasses motions for reconsideration. 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE 2D § 2810.1 (2007). In the interests of

finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy, to be employed sparingly. *U.S. v. Bailey*, 288 F.Supp.2d 1261, 1267 (M.D.Fla. 2003). A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. *Union Planters Nat. Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982).[1] The decision to alter or amend a judgment is committed to the sound discretion of the district court. *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992).

Generally speaking, the authorities recognize four basic grounds upon which a Rule 59(e) motion may be granted.

> First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE 2D § 2810.1 (2007). Parties cannot use a Rule 59(e) motion to relitigate old matters, *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005), or to raise new legal arguments which could and should have been made during the pendency of the underlying motion, *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1292 (11th Cir. 2001). Where a party attempts to introduce previously unsubmitted evidence in support of a motion to reconsider, the party must make some showing that the evidence previously was unavailable.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

*Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) (citing, *inter alia*, *Engelhard Indus. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963), *cert. denied*, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964)). To avoid repetitive arguments on issues already considered fully by the court, rules governing reargument are narrowly construed and strictly applied. *St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, 976 F.Supp. 198 (S.D.N.Y. 1996).

**Trudo Deposition**

Prior to instituting this action, CAPA filed suit against these same defendants in California. (Doc. 39-1 at 1). In support of its motion for reconsideration, CAPA attempts to rely on statements made by Trudo during a February 19, 2010 deposition (Doc. 39-1) taken in connection with that case. CAPA refers to this testimony as "newly discovered evidence". (Doc. 38 at 6). However, CAPA makes no effort to show that the transcript of that deposition was previously unavailable. The deposition took place months before CAPA filed its response to the motions to dismiss, and it was conducted by CAPA's attorney in the California matter. (Doc. 39-1 at 1-2). The Court finds no basis for treating Trudo's testimony as newly discovered evidence.

**Breach of Contract against SCT Performance**

CAPA argues that the Court erred in dismissing its claims against Defendant SCT Performance, LLC ("SCT Performance") and in particular its breach of contract claim against that entity, which had been asserted in Count II. The contract in question was a 2005 agreement (Doc. 24-1 at 3-11) (henceforth, the "Distribution Contract") between CAPA and "SCT/Superchips Custom Tuning." According to the allegations of the Amended Complaint (Doc. 24), SCT/Superchips Custom Tuning eventually became Defendant TCS Obsolete, LLC ("TCS Obsolete"). CAPA had asserted that SCT Performance, which was not originally a party to the

Distribution Contract, had assumed and performed under it. However, the Court found that CAPA had failed to assert a factual basis that would support a conclusion that SCT Performance assumed the Distribution Contract.

CAPA complains that SCT Performance has not responded to CAPA's discovery requests. (Doc. 38 at 5). CAPA also asserts that "it is not beyond the realm of possibilities that the contract in question or the assets of TCS Obsolete were assigned to SCT Performance, thus allowing SCT Performance to perform under the contract." (Doc. 38 at 5). Reading these comments together, it appears that CAPA believes it is improper to dismiss the breach of contract claim until it has had the opportunity to conduct discovery to determine whether there is any basis for it (or, more particularly, for its assertion that SCT Performance assumed the Distribution Contract before breaching it). But discovery under the Federal Rules of Civil Procedure "is intended to narrow the scope of the issues and prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he filed has any basis in fact." *Lazarre v. JPMorgan Chase Bank, N.A.*, — F.Supp.2d —, 2011 WL 1438432 (S.D.Fla. 2011) (internal quotation omitted). Arguing that "it is not outside the realm of possibilities" that SCT Performance somehow assumed the contract is a clear sign that CAPA is engaging in sheer speculation.

Moreover, the breach of contract claim suffered from other fundamental problems. CAPA asserted that SCT Performance "assumed and began performing as early as May 19, 2006." (Doc. 24 at 8), However, SCT Performance did not come into existence until 2007. And the Distribution Contract contains a clause (Doc. 24 at 9) requiring prior written approval by CAPA before the contract could be assigned, which is inconsistent with CAPA's theory that a stranger to the

contract simply took over for either SCT/Superchips Custom Tuning or the purported successor, TCS Obsolete.

CAPA has failed to show that the dismissal of the breach of contract claim was in error. However, upon reconsideration, the Court finds that it has not been shown that there is no possibility for CAPA to state a claim against SCT Performance for breach of contract or for some form of successor liability for an earlier breach. *See*, *e.g.*, *Laboratory Corporation of America v. Professional Recovery Network*, 813 So. 2d 266, 269-70 (Fla. 5th DCA 2002) (discussing circumstances under which Florida courts may impose liabilities of predecessor corporation upon successor). Dismissal with prejudice was therefore not warranted. Accordingly, the dismissal of Count II will be converted to one without prejudice. If CAPA chooses to replead this count, however, the allegations it contains must be based on something more than mere speculation.

**Tortious Interference**

In Count III of the Amended Complaint, CAPA asserted claims for tortious interference against the three individual defendants. The Court dismissed Count III with leave to replead, for two reasons. First, CAPA appeared to have alleged that the individual defendants were employed by TCS Obsolete and had tortiously interfered with a contract between TCS Obsolete and CAPA. This is improper, except under circumstances not alleged in the Amended Complaint. *See Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 (Fla. 1st DCA) (stating that (1) generally, tortious interference claim exists only against persons who are not parties to the contractual relationship and (2) employees and representatives of a contracting party must be considered as a party to the contractual relationship). Second, CAPA had "improperly attempted to blend all of the defendants

into a single entity known as 'SCT' for purposes of pleading" (Doc. 37 at 5), in violation of a previous court order forbidding this tactic.

In the instant motion, CAPA complains that it did, in fact, state a claim for tortious interference in Count III. This misses the point. The count was dismissed, with leave to replead, for CAPA to eliminate the improper claims and to cure the improper blending of many defendants into one.[2]

**Fraudulent Misrepresentations**

In Count XIX, CAPA attempted to assert a claim against Trudo for fraudulent misrepresentation. The Court dismissed the count without prejudice. At one point, the Court noted that CAPA had violated Rule 9 of the Federal Rules of Civil Procedure because it had "failed to state with particularity the party to whom Trudo made the statement or statements at issue, how or when Trudo did so, even the party on whose behalf – TCS [Obsolete] or SCT

---

[2]CAPA also seeks reconsideration of the requirement that it eliminate the "reams of unnecessary and irrelevant material" found in Count III and throughout the Amended Complaint, "such as details about trips to England by the individual defendants which do nothing to establish the elements of a claims for tortious interference." (Doc. 37 at 6). CAPA asserts that it included such information in every count in response to an earlier court order dismissing its original complaint. In that earlier order, the Court complained of a "bizarre and confusing lack of specificity" and dismissed the complaint "so that the Plaintiff can properly describe the actions taken by each defendant entity and, if appropriate, by non-party entities." As a result, CAPA says, it "outlined the 'actions' each defendant took, including a trip to England to plan how the contracts would be interfered with and circumvented." (Doc. 38 at 21).

However, as is obvious from a review of the first order (Doc. 24), the "bizarre and confusing lack of specificity" referred to the Plaintiff's practice of blending together different defendants and other unidentified entities for pleading purposes. This amalgamation, referred to as "SCT," was alleged to have taken many of the actions at issue in the complaint, even where at least some of those entities could not have done so, or where the identity of the particular party doing something (such as entering the contract with CAPA) was known. (Doc. 21 at 4). In other words, the problem was not confusion over what actions were taken; the problem was confusion over who acted.

-6-

Performance – Trudo made the statement." (Doc. 37 at 8). In its motion, CAPA responded as follows:

> Perhaps the court overlooked the following paragraphs which read:
>
> 451.  As early as November 13, 2006, by email Trudo indicated to CAPA that no one could buy direct through TCS Obsolete from CAPA's territory, and that CAPA had the exclusive right to sell his/its product in Australia and the UK, particularly a product known as the ST225 technology and that David Posea had the power to "shut off all dongles of those other than you in the territory." Thereafter during the year 2007, Trudo would repeat this representation to Tony Rullo the President of CAPA in phone conversations between the two.
>
> 454.  Trudo made the specific representation that they [presumably TCS Obsolete but it could also be SCT Performance since that entity owned the SCT logo used in the transmission] could not "load" or service the ST225 product. CAPA relied on this representation by ceasing to sell the product for a period of time. This representation was false, and Trudo knew it to be false, as Trudo was actively servicing and loading ST225 products for Dreamscience to give it a competitive advantage in the market. Trudo intended that CAPA rely on this misrepresentation in order to keep them out of the ST225 market which he had promised to Dreamscience. The specific misrepresentation is contained in a July 16, 2007 from Trudo to Dreamscience bragging about his deceit. In reality, as early as April 21, 2007, Adam Contoret had confirmed in an email to Trudo and Johnson that, thanks to them, he had the ability to load or service the ST225 technology.
>
> Time, place, content, and who made the representations and to whom are plead. Amendment of Count XIX is not necessary but if the court wants Plaintiff to re-plead it certainly will.

(Doc. 38 at 24).

The allegations made in paragraph 451 were not dismissed on Rule 9 grounds, however. Those allegations were dismissed because they were an improper attempt to recast CAPA's breach of contract claim (*i.e.*, that TCS Obsolete had violated the exclusivity provisions of the Distribution Agreement) into a fraud claim. *See* Doc. 37 at 8. As for paragraph 454, it does identify Trudo's alleged misrepresentation regarding his company's ability to service a particular

-7-

product, and states that CAPA relied on that misrepresentation to its detriment. However, as pled, Trudo actually made the statement only to Dreamscience (which is alleged to have been a participant in Trudo's scheme), not CAPA. It makes no sense that Trudo would make a false statement to someone who was in on the plot in hopes that CAPA would somehow find out about it and rely on it. Presumably, the Plaintiff intended to assert that Trudo also made the misrepresentation to *someone at CAPA*. As is plain from paragraph 454, however, if such a communication occurred, CAPA has not set forth any of the pertinent details about it, such as the date it occurred, or the person to whom it was made.

**Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Reconsideration (Doc. 38) is **GRANTED IN PART AND DENIED IN PART**, as set forth above.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 29, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party